UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEANETTE BARBUSIN, | : |
| Plaintiff, | : |
| V. | : CASE NO. 3:05-CV-1171(RNC) |
| EASTERN CONNECTICUT STATE UNIVERSITY, ET AL., | : |
| Defendants. | : |

RULING AND ORDER

Plaintiff brings this case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq., against her former employer, Eastern Connecticut State University ("ECSU"), and immediate supervisor, Gilbert Miranda, claiming that she was sexually harassed by Miranda, that her complaint about the harassment resulted in retaliation by Miranda's daughter, Jennifer Murphy, who also worked at ECSU, and that the harassment and retaliation culminated in a constructive discharge. ECSU has moved for summary judgment. In essence, ECSU contends that, assuming plaintiff can prove she was sexually harassed by Miranda and subjected to retaliation by Murphy, it is entitled to judgment as a matter of law based on the affirmative defense recognized in Burlington Industries, Inc. V. Ellerth, 524 U.S. 742 (1998), Faragher v. City of Boca Raton, 524 U.S. 775 (1998), and further delineated in Pennsylvania State Police v. Suders, 542 U.S. 129

(2004). I agree and therefore grant the motion.[1]

I. Legal Standard

Summary judgment may be granted if there is no "genuine issue as to any material fact" and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When the parties' submissions in support of and opposition to a motion for summary judgment show the existence of a factual dispute, the court must decide whether the disputed issue of fact is material and, if so, whether the dispute is genuine. A factual dispute is material if it must be resolved in order to adjudicate an essential element of a claim or defense that is the subject of the motion. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986)(factual disputes preclude summary judgment only if they might affect the outcome of the suit under the governing law). A fact issue is genuine if the evidence in the record, viewed in a light most favorable to the nonmoving party, would permit a reasonable jury to decide in favor

---

[1] The amended complaint does not plead a stand alone retaliation claim against ECSU based on Murphy's conduct (i.e. a retaliation claim separate and distinct from the hostile work environment-constructive discharge claim). Nevertheless, ECSU argues, apparently out of an abundance of caution, that the plaintiff is precluded from pursuing a retaliation claim based on Murphy's conduct because she has failed to exhaust administrative remedies and, further, that any such claim must be dismissed on the merits because Murphy's conduct was not materially adverse. Plaintiff's memorandum in opposition to ECSU's motion for summary judgment does not respond to ECSU's argument. In the absence of any response, I infer that the plaintiff is not pursuing a stand alone retaliation claim and therefore confine the discussion in the text to the hostile work environment-constructive discharge claim.

of that party. See id. Consistent with this standard, evidence favorable to the nonmoving party must be credited if a reasonable jury could credit it; evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached. See Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150-51 (2000)(discussing identical standard governing motion for judgment as a matter of law under Rule 50).

II. Background

The summary judgment record, viewed most favorably to the plaintiff, establishes the following facts.[2] Plaintiff worked as a police officer for ECSU from May 4, 2001, until she resigned effective December 2, 2003. In February 2003, her immediate supervisor on the third shift, defendant Miranda, started making unwelcome comments to her about her body, sometimes while holding her hand or touching her face. Each time Miranda did this, plaintiff asked him to stop, but his sexual advances and comments continued for months. ECSU had a written sexual harassment policy, which it provided to new hires at orientation, including the plaintiff. The policy was also published in an employee manual and

---

[2] Most of the facts set forth in the text are undisputed, as shown by the parties' Local Rule 56 Statements. Unless otherwise indicated, any material factual disputes disclosed by the parties' Local Rule 56 statements have been resolved in favor of the plaintiff for purposes of summary judgment.

posted in conspicuous places. Plaintiff knew how to report Miranda's harassment to ECSU but she refrained from doing so.

On June 18, 2003, plaintiff reported for work on the third shift and learned that she and Miranda would be working alone. At about 2:30 a.m., she and Miranda were in the dispatch area talking about her plans to go on vacation with her ex-husband and son. Miranda told the plaintiff that he would miss her and said he wanted to give her a hug. Plaintiff did not think he was going to do anything inappropriate, so she accepted the hug. As she tried to disengage, he pulled her closer, and lowered his head to kiss her on the mouth. Plaintiff pulled away and he ended up kissing her on the forehead.

Plaintiff left for her previously scheduled vacation on June 18, and returned on June 25. After she returned, she told two co-workers, Richard Calderone and Hector Tirado, that Miranda had sexually harassed her on numerous occasions during the preceding months. On July 4, Officer Calderone informed ECSU's Chief of Police, Lewis Perry.

On July 7, Chief Perry reported the plaintiff's allegations to ECSU's Director of Diversity and Equity, Constance Belton-Green. Belton-Green asked Perry to investigate.

Perry immediately contacted the plaintiff at home and arranged to meet with her later that day. When they met, the plaintiff provided a detailed description of unwelcome sexual advances and

4

comments by Miranda. The next day, at Perry's request, she filled out a formal complaint form stating that she felt she had been sexually harassed by Miranda since May.

Perry then contacted Miranda and arranged to meet with him. At that meeting, which also occurred on July 8, Perry gave Miranda a copy of the plaintiff's written complaint. Miranda declined to make a statement until he could have his union representative with him. He provided a statement the next day. Perry reassigned Miranda to the first shift pending the outcome of the investigation.[3]

On July 23, 2003, the plaintiff filed a complaint with the Connecticut Commission on Human Rights and Opportunities. The complaint alleged that the plaintiff had experienced a sexually hostile work environment created by Miranda from February through June 17, 2003. The complaint was never amended to include any

---

[3] The parties dispute whether Miranda was reassigned as soon as Perry learned about the harassment on July 4 or after a brief delay. Plaintiff has testified that she believes Perry "let[] about a week go by" during which time Miranda was "still supervising [her]" and she "felt like [she] still had to work under him." Pl.'s Dep. 54. Patrol activity records confirm that Miranda did not start his new shift assignment until July 14. The same records also show that the plaintiff and Miranda did not work the same shift after July 4, and that at least one of them was absent every day from July 4 through 13 except July 8 and 9. In any event, the parties' dispute is not material because the plaintiff does not contend that ECSU failed to take prompt action to prevent harassment from occurring after July 4 and she admits that no further harassment occurred.

5

other claims.[4]

As a result of Perry's investigation, ECSU determined that Miranda's employment should be terminated. The decision to terminate his employment was based on his sexual harassment of both the plaintiff and another employee, Tina Lee, who worked at ECSU as a night custodian. ECSU terminated Miranda's employment effective October 16, 2003. Miranda grieved the termination.

After Miranda's employment was terminated, his daughter, Jennifer Murphy, who also worked as a police officer at ECSU, retaliated against both the plaintiff and Lee for complaining about Miranda's harassment. The plaintiff recalls the following incidents:

1. On two occasions in 2004, Murphy was the most senior officer on the plaintiff's shift and thus served as the "officer in charge" with authority to assign other officers, including the plaintiff, to various sectors and cruisers for the duration of the shift. On one or both of these occasions, Murphy assigned the plaintiff to a sector she knew the plaintiff would not like and to a different cruiser than the one she knew the plaintiff preferred.

---

[4] On July 24, 2003, the day after the plaintiff filed her CHRO complaint, she and other officers attended a firearms training session at ECSU that was conducted by Miranda. The parties dispute whether the plaintiff was required to attend this session or voluntarily chose to do so. This factual dispute is also not material because the plaintiff offers no allegation or argument relating to the training session that detracts from ECSU's affirmative defense.

6

2. On one occasion in 2004, Murphy failed to return a set of keys to a key closet at the end of her shift, thus making it necessary for the plaintiff to retrieve the keys from Murphy personally at the start of the plaintiff's shift. A verbal exchange between the two ensued. That night, Murphy contacted Lieutenant Derrick McBride and complained that the plaintiff had instigated an argument. Both Murphy and the plaintiff were told to submit memos to McBride concerning the incident. McBride subsequently decided that no discipline was warranted.

3. On another occasion in 2004, Murphy entered a code in a patrol activity log (perhaps while acting as the "officer in charge" of a shift) making it appear that the plaintiff had conducted a motor vehicle stop outside of ECSU's jurisdiction when in fact all she had done was notify the local police that a vehicle was being operated without headlights. A dispatcher informed the plaintiff of the incorrect code entry. She, in turn, reported this to McBride, and the log was corrected.

4. Also in 2004, Murphy complained to McBride that the plaintiff had acted unprofessionally at a training exercise attended by numerous police departments in that she had trained with another department rather than her own. The next day, McBride called the plaintiff into his office. After some discussion, McBride told the plaintiff that her decision to avoid training with

Murphy was fine with him.

Tina Lee lodged a complaint with ECSU accusing Murphy of retaliation. As a result of Lee's complaint, ECSU suspended Murphy for two days. Plaintiff did not file such a complaint herself but she did keep McBride informed of Murphy's actions. McBride told her that she and Murphy needed to get along.

On November 27, 2004, the grievance proceeding initiated by Miranda resulted in an arbitration award in his favor. The arbitrator awarded Miranda reinstatement with a demotion in rank and a reduction in pay. Pursuant to the arbitration award, Miranda returned to work as a police officer at ECSU on December 10, 2004.

On November 18, 2004, shortly before the arbitration award was issued, Perry received a letter from the plaintiff informing him that she was resigning effective December 2, 2004, in order to accept a position with the Meriden Police Department. The letter made no mention of Miranda. However, the plaintiff had heard rumors that Miranda was going to win his case and return to ECSU as a police officer. The prospect of his return was very upsetting to her and she felt compelled to resign.

III. Discussion

The basic issue presented by ECSU's motion for summary judgment is whether it can be held liable for a constructive discharge resulting from a hostile work environment created by Miranda's sexual harassment. To establish that Miranda's harassment created

8

a hostile work environment, plaintiff must prove that his unwelcome advances and comments were "sufficiently severe and pervasive 'to alter the conditions of [her] employment and create an abusive work environment.'" Meritor Savings Bank v. Vinson, 477 U.S. 57, 67 (1986). For present purposes, ECSU assumes that the plaintiff can make this showing.

Under Title VII, an employer is strictly liable for supervisor harassment if the harassment culminates in a "tangible employment action, such as discharge, demotion, or undesirable reassignment." Ellerth, 524 U.S. at 765; accord Faragher, 524 U.S. at 808. "[W]hen no tangible employment action is taken, the employer may defeat vicarious liability for supervisor harassment by establishing, as an affirmative defense, both that 'the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' and that 'the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.'" Suders, 542 U.S. at 145-46 (quoting Ellerth, 524 U.S. at 765).

ECSU contends that it is entitled to summary judgment because (1) plaintiff cannot prove that Miranda's harassment culminated in any tangible employment action and (2) both elements of the affirmative defense set forth in Ellerth and Faragher are clearly satisfied. Plaintiff responds with two arguments. She contends

9

that Miranda's sexual harassment culminated in her constructive discharge, which constitutes a tangible employment action that prevents ECSU from availing itself of the affirmative defense recognized in Ellerth and Faragher. See Pl.'s Mem. In Opp. to S.J. at 10. In addition, she contends that ECSU may be held liable for Miranda's harassment, even in the absence of a tangible employment action, because it cannot carry its burden of proving that she unreasonably failed to avail herself of its process for reporting the harassment. See id. at 13. In support of this argument, she points to the fact that she reported the harassment to Chief Perry within twenty days of the most egregious conduct by Miranda. See id. ECSU replies that the plaintiff cannot prove she was constructively discharged and that her failure to report the harassment earlier was unreasonable as a matter of law. I agree.[5]

To prevail on her claim of constructive discharge, plaintiff

---

[5] ECSU also argues that plaintiff has failed to exhaust administrative remedies with regard to her constructive discharge claim because she failed to amend her CHRO complaint. Plaintiff is entitled to assert the constructive discharge claim if it is reasonably related to the hostile work environment claim she presented to the CHRO. See Ximines v. George Wingate High School, 516 F.3d 156, 158 (2d Cir. 2008). A claim is considered reasonably related for this purpose if it would fall within the reasonably expected scope of an investigation of the original charge of discrimination. See Alfano v. Costello, 294 F.3d 365, 381 (2d Cir. 2002). Whether this test is satisfied need not be decided because, even assuming the constructive discharge claim is reasonably related to the claim presented to the CHRO, and thus properly asserted here, the claim fails on the merits.

must prove that ECSU "deliberately and discriminatorily created work conditions 'so intolerable that a reasonable person in [her] position would have felt compelled to resign.'" Ferraro v. Kellwood Co., 440 F.3d 96, 101 (2d Cir. 2006)(quoting Suders, 542 U.S. at 141). This formulation requires proof of two essential elements. First, plaintiff must be able to prove that the conduct complained of constituted official action of ECSU, as distinct from co-worker conduct or unofficial supervisory conduct. See Suders, 542 U.S. at 148-49. Second, she must be able to prove that the conduct was even more severe and pervasive than the conduct required to support a hostile work environment claim. See id. at 146-47. Plaintiff cannot prove the first element.[6] She claims she was forced to resign when it became clear that Miranda was going to win his case and return to the workplace. Pl.'s Mem. In Opp. To S.J. at 12. She also points to Murphy's conduct, claiming that it "created a hostile environment . . . which added to the pressure, anxiety and stress that forced [her] to submit her resignation." Id. No reasonable jury could find that Miranda's reinstatement pursuant to the arbitration award constituted official action of ECSU. Nor could a reasonable jury find that Murphy's conduct constituted such official action. Accordingly, ECSU is entitled to avail itself of the affirmative defense recognized in Ellerth and Faragher.

---

[6] Because plaintiff cannot prove the first element, it is unnecessary to decide whether a reasonable person in her position would have felt compelled to resign.

As noted earlier, this defense requires ECSU to prove that it used reasonable care to prevent sexual harassment in the workplace, and that the plaintiff unreasonably failed to take advantage of the means ECSU made available to her to avoid harm.  Plaintiff, who admits that she received ECSU's antiharassment policy at the start of her employment, does not contend that ECSU failed to exercise reasonable care to prevent harassment.  Thus, ECSU has established the first prong of the affirmative defense as a matter of law. See Ferraro, 440 F.3d at 102 (employer may demonstrate exercise of reasonable care by showing that it had an antiharassment policy).  With regard to the second prong of the defense, it is undisputed that the plaintiff failed to report Miranda's harassment for a period of four months, although she knew how to do so.  Plaintiff has not attempted to justify her failure to report the harassment earlier.  Accordingly, the second prong of the affirmative defense is also established as a matter of law.  See id. at 103 (employer may carry its burden on the second prong of the defense "by first introducing evidence that the plaintiff failed to avail herself of the [employer's] complaint procedure and then relying on the absence or inadequacy of the plaintiff's justification for that failure.").

IV. Conclusion

For the foregoing reasons, ECSU's motion for summary judgment [doc. #45] is hereby granted.

So ordered.

Dated at Hartford, Connecticut this 27 day of August 2008.

                                          /s/ RNC
                                   Robert N. Chatigny
                            United States District Judge